# Exhibit A:
Robert Stanley Tripka's
December 2018
Warranty Deed to
Charles Edward Lincoln III

After Recording, Please
Return Original Deed and
Mail All Tax Statements to:

Charles Edward Lincoln III
224 Walnut Street
New Orleans, Louisiana 70118

## WARRANTY DEED

### Property Address:
### 122 Harbor Drive, Palm Harbor (Ozona), Florida 34683

On this ___2-th___ day the _____ day of December 2018, Robert
Stanley Tripka, a single (divorced) man, whose mailing address is 122
Harbor Drive, Palm Harbor (Ozona), Florida 34683, did sign, acknowledge,
and fully execute this deed conveying, delivering and granting all rights, legal
title and equitable interest forever in fee simple absolute, to Charles Edward
Lincoln III, a resident of the State of California, with mailing address at 224
Walnut Street, New Orleans, Louisiana 70118, to, and in, the herein
described land situated, lying, and being located in Pinellas County, Florida,
legally described as follows, to wit:

OZONA SHORES 4th ADD LOT 28
*Census Tract: 121030272022*
As recorded in Book 49 at Page 46 of the Subdivision Plat
For Ozona Shores 4th Addition in
Pinellas County, Florida, Section 10, Township 28 South
Range 15 East

More commonly known as 122 Harbor Drive in Palm Harbor (Ozona),
Florida 33683.

Grantor Robert Stanley Tripka fully guarantees, promises, and
warrants to the grantee that there are no undisclosed claims, deed, liens,
encumbrances or other liabilities associated with, relating or attached to, or
otherwise affecting the property, 122 Harbor Drive in Palm Harbor, Florida
33686, in any way. All claims or encumbrances, including all those which
might be disputed or contingent, including all those which might be disputed

*Robert Stanley Tripka's Warranty Deed to Charles Edward Lincoln III*          1

or contingent, have been enumerated, itemized, and fully disclosed to the grantee Charles Edward Lincoln III after the grantor's diligent search of all relevant and accessible public and private records, stipulation to the conduct of which grantor hereby makes and acknowledges. Charles Edward Lincoln III acknowledges, in accepting this property, Robert Stanely Tripka's Notice of Lis Pendens filed July 3, 2018, concerning this property, as well as one or more prior lis pendens filings by Wachovia

*TO HAVE AND TO HOLD, THE SAME, IN FEE SIMPLE FOREVER.*

Signed and executed in Pinellas County, Florida, on this 18th day of December 2018, in consideration of Charles Edward Lincoln III's guarantee, promise, and warranty of both a common law life estate and a civil code usufruct for life, enforceable under the laws of the State of Louisiana, to Robert Stanley Tripka, in the above-described property.

In witness hereinof, Grantor Robert Stanley Tripka has set Grantor's individual hand and signature on this ⟨27th⟩ day of December 2018, and has signed, sealed, and delivered this deed in the presence of the undersigned witnesses and notary public:

Robert Stanley Tripka, Grantor
122 Harbor Drive
Palm Harbor (Ozona), Florida 34683
Telephone: (727) 458-9135
E-mail: rtripka@hotmail.com

**Witness Affirmations:**

We hereby affirm, certify, and verify under penalty of perjury that we observed, saw, and witnessed the Grantor, Robert Stanley Tripka, a person either known to us or providing sufficient legal identification issued by the State of Florida, as he signed, executed, and acknowledged this Warranty

*Robert Stanley Tripka's Warranty Deed to Charles Edward Lincoln III*     2

Deed before us and in our personal presence on the ⟨27th⟩ day of December, 2018 in the city or town of ⟨WIRCORPRISED⟩ in Pinellas County, Florida

First Witness Signature: ⟨Shawn Ripple⟩
Sharon Ripple

First Witness Name: ⟨MICHAEL J GUTO⟩

And

Second Witness Signature: ⟨Patricia Brady⟩

Second Witness Name: ⟨Patricia Brady⟩

*Robert Stanley Tripka's Warranty Deed to Charles Edward Lincoln III*   3

## JURAT

Before me on this ___27th___ day the _____ day of December, 2018,
Robert Stanley Tripka and two competent adult witnesses _SHARON_
_RIPPLE_ and _PATRICIA_ _BRADY_,
Each of them being individuals personally known to me and/or presenting
legally sufficient identification, appeared in person before me to sign,
execute, and acknowledge this above warranty deed to Charles Edward
Lincoln III.  Robert Stanley Tripka and both of his witnesses having been
duly sworn on his or her oath, the grantor did affirm and acknowledge this
Warranty Deed granting all right, title, and interest in and to 122 Palm
Harbor Drive in Palm Harbor (Ozona), Florida 34683 from himself to
Charles Edward Lincoln III.

_____
Notary Public, State of Florida, Pinellas County
FL. DR. LIC.

My notarial seal appears herein above this line

_____
Printed Name of Notary

_____

MICHAEL J. GUJU
Notary Public - State of Florida
Commission # GG 136749
My Comm. Expires Dec 17, 2021
Bonded through National Notary Assn.

_____
Business address & telephone of Notary Public

*Robert Stanley Tripka's Warranty Deed to Charles Edward Lincoln III*        4



**KEN BURKE**
Clerk of the Circuit Court and Comptroller
315 Court St.
Clearwater, FL 33756
Tel. (727) 464-7000
http://www.pinellasclerk.org

# 4309929

| | |
|---|---|
| Receipt #: | 4025490 |
| Cashier Date: | 1/3/2019  2:26:24PM |
| Print Date: | 1/3/2019  2:26:43PM |

| CUSTOMER INFORMATION | TRANSACTION INFORMATION | | PAYMENT SUMMARY | |
|---|---|---|---|---|
| 30093009 | Date Received: | 1/3/2019  2:23:03PM | Total Fees: | $0.00 |
| CHARLES EDWARD LINCOLN III | Location: | NC | Total Payments: | $36.13 |
| 224 WALNUT STREET | Return Code: | | Agent Account Deposit: | $36.13 |
| NEW ORLEANS,LA 70118 | Trans Type: | InternalSearch | | |
| | Reference: | | Cash Tendered: | |
| Escrow Balance | Cashier: | CLKDM83 | Change: | $0.00 |

| Payment | | |
|---|---|---|
| **CHECK** | #15043 | $36.13 |
| | Escrow Deposit | $36.13 |

Miscellaneous Item
**MISC**

# Exhibit B:
Memorandum of Agreement
& Understanding with
Lawrence Paul Barnett &
Christina Anne Hall
(Tripka sabotaged)

## Memorandum of Agreement & Understanding
Charles Edward Lincoln III with
Lawrence Paul Barnett & Christina Anne Hall
Re: 122 Harbor Drive, Burghstream Point
Palm Harbor (Ozona), Florida 34683

Lessor:

Whereas Charles Edward Lincoln III (hereinafter "CEL III") is the owner in fee simple of 122 Harbor Drive, subject only to encumbrances received from his Grantor Robert Stanley Tripka which are now in litigation (Case 2D18-4407) in the Second District Court of Appeal of the State of Florida, and may be the subject to further litigation, yet to be filed. by CEL III v. Wells Fargo Bank, and offers to lease 122 Harbor Drive, Palm Harbor, Florida for the refundable sum of $2550 for three months + additional (uncompensated) labor, equipment, and material sufficient to completely clean and refurbish the interior of the house at 122 Harbor Dr., which is today "a major mess",

Lessee:

And whereas, Lawrence Paul Barnett & Christina Anne Hall (hereinafter "LPB & CAH"), wish to lease 2 (two) bedrooms and garage space on the premises, for themselves and their teenage daughter, and one dog (only),

Fair Market Value:

And whereas, LPB, CAH and CEL III agree that 122 Harbor Drive is located in an upscale neighborhood of Ozona in Palm Harbor, (to wit: Gulfside/bay or inland waterway waterfront on Burghstream Point in Pinellas County) where (on Craigslist) the rental for a single room or studio (some much smaller than this) is $800-$1500, with some 2 bedroom properties on the Pinellas County waterfront listed as high as $5,000/month,

Pending Bankruptcy & Possible Change of Circumstances within 120 days:
And whereas LPB & CAH acknowledges and understands all the ramifications of CEL III's disclosure that the subject property at 122 Harbor Drive is part of a pending Petition for Chapter 11 Reorganization (Case Number 19-bk-05127-CED) in United States Bankruptcy Court for the Middle District of Florida, Tampa Division, pending before the Hon. Judge Caryl E. Delano.
Except by formal modification or replacement, by a lease of equal or greater formality, under no circumstances shall this contract or occupancy of 122 Harbor Drive hereunder be extended beyond October 31, 2019.

Now therefore,

LPB & CAH agree to pay CEL III a total deposit-for-tri-monthly-rent of $2550, of which $850 must be paid before 4:00 p.m on Tuesday, July 16, 2019 by deposit to CEL III's account at Iberiabank---no keys will be released to the premises prior to payment of this $850.00.

For the balance of this deposit, LPB & CAH agree to pay $_____ on Friday, July 19, 2019, by deposit to CEL III's account at Iberiabank previously used, prior to 4:00 PM on that same Monday, and the remaining _____ due and payable on or before August 15, 2019.

Failing payment of $2550.00 by August 15, 2019, LPB & CAH agree to move and vacate immediately, waiving all presentment and notice requirements, and promising to defend and indemnify CEL III for any and all losses and costs incurred in enforcing this agreement.

LPB & CAH agree and understand that their deposit for rent is supplemented by their joint & several promise to CEL III, to clean the filthy premises created by the former owner and current partial (1 bedroom only) current occupant of the property, Robert Stanley Tripka.

LPB & CAH acknowledge that they will bear the complete cost for this cleaning effort and that they must take precautionary measures to protect their and their daughter's health, although Lincoln will make best efforts to obtain full insurance coverage for this property, and this may include allowing health inspections and insurance adjustor review of the property.

CEL III's purpose is his Chapter 11 BK is to refinance the property.

If CEL III is successful (which he cannot and does not guarantee) LPB & CAH may renew her lease beyond October 31, 2019, without further payment of deposit, although the rent at that point, assuming refinancing is completed by then, will be at or above the $2550/month rate.

After October 31, 2019, and the fixing of the rent at that time, LPB & CAH will be entitled to rent for any term of months up to and including December 2020, without payment of any further deposit and without payment of the month of November 2019, so long as the house has by October 31, 2019 been rendered cleaned and necessary repairs made.

---2---

LPB & CAH have made substantial and material representations that they are both able and willing to perform all cleaning, maintenance, and repair work on the house, or to subcontract out certain specialized tasks, at their cost, such as the removal of bees from the outside stairwell.

LPB & CAH understands that they are renting ONLY two bedrooms and the adjacent included bath and RIGHTS to but not exclusive use of all common areas including the living room, dining room, pool, boat dock, garage, and outside of the house. LPB & CAH or their daughter or other guests may park cars in the garage or driveway, of course, and dock any boats at the boat dock, and have guests in the common areas with reasonable notice to any other occupant ("Tripka or his successor").

Even if at no time residing on the property, at no time will LPB & CAH impede or limit Charles Edward Lincoln III's access to the property, but will assist and cooperate with him whenever necessary, including allowing CEL III's licensees, invitees, agents, appraisers, health officials, or insurance agents or adjusters to enter and inspect the property for any and all legal purposes.

Further, LPB & CAH waive all notices regarding the termination of the lease if not expressly agreed and renewed after October 31, 2019. Failing written renewal, LPB & CAH agree to move and vacate the property and to defend and indemnify CEL III for any delay or failure to vacate at the rate of $100/day for every day starting November 1, 2019, for which LPB & CAH waive all statutory and common law rights of and to demand, notice and presentment.

Robert Stanley Tripka appears to have offended Wells Fargo and the bank's realtor, apparently, by his dereliction of the house. They are absolutely refusing to talk to me about refinancing until Bob Tripka is gone. After my own observations and your reports from the cleaning front, CEL III, LPB & CAH agree and understand that they (and Wells Fargo) think the house is a "tear down" at the present time because of the extremely derelict and unsanitary condition it is in, and they (and apparently Wells Fargo) blame Robert Stanley Tripka, in whole or in part.

Robert Stanley Tripka has agreed fully to cooperate (and must at all times in fact cooperate) with all work involving and relating to the cleaning,

maintenance, and rehabilitation of this house or else CEL III will require him to move out by Friday, August 9, 2019;

LPB & CAH agree to keep their dog separate from Tripka's cat.

This agreement is NOT confidential, and may be filed with the U.S. Bankruptcy Court for the Middle District of Florida, Tampa Division, and otherwise published and circulated to brokers and lenders.

LPB & CAH must sign and acknowledge this final agreement will be signed and acknowledged before notary on Tuesday, July 16, 2019, in addition to making a cash deposit of $850.00 in Iberiabank prior to 4:00 p.m. Eastern Daylight Time (3:00 p.m. Central Daylight Time).


**Lawrence Paul Barnett**
Florida Identification Card:
**B653-535-84-008-0**
Expires 01/08/2024
**Telephone: 757-348-4508**

**Christina Anne Hall**
Florida Identification Card:
**H400-101-79-547-1**
Expires 02/07/2024
**E-mail: bubbanchrissy@gmail.com**

### Florida Notary's Jurat for Christina Anne Hall

Christina Anne Hall appeared in person before me in the city of _Port Richey_ in _Pasco_ County, Florida, on 16 day the _16_ day of July, 2019, to sign, execute, acknowledge, and affirm the above-and-foregoing Memorandum of Agreement & Understanding with Charles Edward Lincoln III.

I am a notary in the state of Florida, authorized to administer oaths and take declarations and evidence.

SIGNED AND ACKNOWLEDGED BEFORE ME, a Notary Public in _Pasco_, Florida, on this _16_ day of July, 2019.

SOFIA KARAGIANNIS
Notary Public - State of Florida
Commission # FF 932042
My Comm. Expires Oct 29, 2019
Bonded through National Notary Assn.

Notary Public, State of Florida

—=== 4 ===—

## Florida Notary's Jurat for Lawrence Paul Barnett

Lawrence Paul Barnett appeared in person before me in the city of ___Port Richey___ in ___Pasco___ County, Florida, on _16_ day the _16_ day of July, 2019, to sign, execute, acknowledge, and affirm the above-and-foregoing Memorandum of Agreement & Understanding with Charles Edward Lincoln III.

I am a notary in the state of Florida, authorized to administer oaths and take declarations and evidence.

SIGNED AND ACKNOWLEDGED BEFORE ME, a Notary Public in ___Pasco___, Florida, on this _16_ day of July, 2019.

SOFIA KARAGIANNIS
Notary Public - State of Florida
Commission # FF 932042
My Comm. Expires Oct 29, 2019
Bonded through National Notary Assn.

_____
Notary Public, State of Florida

---5---

# Exhibit C:
Threat of Lawsuit from
Barnett & Hall because of
Tripka's Interference & Bad
Faith

Lawrence Paul Barnett
Christina Anne Hall
10922 Oak Drive
Hudson, Florida 34669

Saturday
July 20, 2019

Mr. Robert Stanley Tripka
122 Harbor Drive
Palm Harbor, Florida 34683

I attach a copy of the agreement I had with Mr. Charles Edward Lincoln III. Chrissy and I are giving you notice by this letter that if you do not deliver possession of the premises we agreed to lease (two bed rooms, one bath and garage space) you and Mr. Lincoln agreed to lease us, we will sue you for the sum of $55,000.00 for breach of contract, breach of the implied covenant of good faith and fair dealing, and for tortious interference with Contract, in the Sixth Circuit Court of Pinellas County.

The sum of $50,000.00 is what Mr. Lincoln told us he admitted to the Bankruptcy Judge in Court on Tuesday, July 16, 2019, was his estimate for repair work on the house to put it in top marketable condition.   That work was rightfully mine and Chrissy's.  $50,000.00 was our reasonable expectation of legitimate business and cash flow, even if it was not all profit.

Mr. Lincoln, by his e-mails, has already confessed that we had a valid agreement with him and that you are the one who stopped it.  You interfered in our contractual agreement without legal cause or justification. Your change of mind for no reason at all was the sole reason for the breach, which has forced us into an expensive motel.  Our damages from that are $5,000.00.

Chrissy and I understand that you are a realtor and so, if you don't let us move in and consummate the contract, we will report you to the Florida Board of Real Estate Commission, Department of Business & Professional Regulation.

You have done something completely crooked and wrong.  Mr. Lincoln wanted to stand by his agreement with us, which was beneficial to both of us---and you agreed too.  We cannot believe that this really happened.

# Exhibit D:
Memorandum of Agreement
& Understanding between
Charles Edward Lincoln III,
Troy P. Johnson, and
Tracy Lynn Gazarek
Signed, Executed & Accepted
August 21, 2019

## <u>Memorandum of Agreement & Understanding for</u>
### <u>RENTAL & RECONSTRUCTION</u>
Charles Edward Lincoln III with
Troy P. Johnson and Tracy Lynn Gazarek
Re: 122 Harbor Drive, Burghstream Point
Palm Harbor (Ozona), Florida 34683

Whereas:

1.     Lessor Charles Edward Lincoln III (hereinafter "CEL III") is the owner in fee simple of 122 Harbor Drive, subject only to encumbrances and claims of indebtedness transferred and received from his Grantor Robert Stanley Tripka which are now in litigation (Case 2D18-4407) in the Second District Court of Appeal of the State of Florida, and may be the subject to further litigation, yet to be filed. by CEL III v. Wells Fargo Bank, and

2.     CEL III offers to lease the house at122 Harbor Drive, Palm Harbor, Florida 34683 for the sum of $1550/month plus labor, equipment, and material sufficient to completely clean and refurbish the interior of the house at 122 Harbor Dr., which is today "a major mess";

3.     Troy P. Johnson & Tracy Lynn Gazarek (hereinafter "TPJ & TLG"), wish to lease this home together with their 18-year old (adult) son Cordelle Gazarek, minor (14-year old) daughter Tabitha Gazarek and brown boxer/pilot hound named Toby (four years old)(no other pets);

4.     TPJ, TLG, and CEL III agree that 122 Harbor Drive is located in an upscale neighborhood of Ozona in Palm Harbor, (to wit: Gulfside/bay or inland waterway waterfront on Burghstream Point in Pinellas County) is (at $1550/month) dramatically underpriced compared with fair market value;

5.     TPJ & TLG acknowledge and understand all the ramifications of CEL III's litigation, both ongoing and planned.

Now therefore,
TPJ & TLG agree to pay CEL III a total of $3300 by cash or cashier's check made payable to Charles Edward Lincoln III, on Wednesday, August 21, 2019 to cover their FIRST & LAST MONTHS RENT (2 x $1550.00 = $3100), plus $200 to cover all incidental recordation, evidence preparation,



_____TPJ          _____TLG          ---1---

& auxiliaries (this lease will be recorded in the public records of Pinellas County, Florida).

TPJ & TLG agree that there are three components to the rent here agreed to for 122 Harbor Drive in Palm Harbor, Florida: (1) cash payments to CEL III in the initial amount of $1550/month, escalating (if and only if TPJ & TLG opt to extend and continue the least under this contract) every six months starting January 5, 2020, (2) a cleaning, reconstruction, & repair component, (3) a litigation cooperation component.

The maximum term of this lease shall be for four years, subject to the following terms and conditions:

Lessees understand that they take this lease subject to a claims and threats of bank ownership which CEL III disputes.   There has been ongoing foreclosure litigation for 11 years on this property and that the property remains in litigation.   CEL III intends to continue fighting, but Lessees understand that there is a threat to CEL III's title.   This lease, in part, is designed to preserve, protect, and defend title ownership in defiance and dispute of the banks' claim and that of their servicers.

$1550.00/month is the cash rent to be paid directly to CEL III for the first four months only (September-December 2019).   During this initial time period TPJ and TLG will make all necessary repairs and keep track of their costs and expenditures, including those of contractors and subcontractors who perform work on the house.   TPJ and TLG promise to use their best efforts to keep costs down.

RECONSTRUCTION & REPAIR MAY SUPPORT LIENS:

All expenditures for which liens are filed may be redeemed either in CEL III's refinancing or in the sale and purchase of 122 Harbor Drive.

CEL III acknowledges, agrees and affirms that TPJ & TLG will provide work, labor or materials on a construction (or reconstruction) project at 122 Harbor Drive in Palm Harbor, Florida 34683 and that their work is one of the three principal purposes of and for this memorandum of agreement and understanding for rental, repair, and reconstruction. [Ordinary surface

_____TPJ_____TPJ          _____TLG_____TLG          ---2---

cleaning does not give rise to liens; removal of mold, however, or bees, may support filing of liens, upon agreement].

CEL III agrees that TPJ & TLG and their contractors, subcontractors, laborers, certain design professionals, sub-subcontractors and material suppliers may file or more Florida mechanics liens for all work undertaken at their own costs. TPJ & TLG affirm and agree that CEL III must approve of all work by parties who may wish to file liens. TPJ & TLG agree and understand that they must deliver (i.e. "serve") a copy of all liens or claims To CEL III and any claimant Banks and to cooperate to make sure all liens are otherwise properly recorded and processed.

So long as TPJ & TLG support CEL III in litigation, CEL III agrees and affirms that he will endorse and support their claims of lien, if necessary, against any third party (e.g. Bank or Bank servicer) claiming an interest in or secured right against the property at 122 Harbor Drive, Palm Harbor, Florida 34683 so long as the work is well-documented and legitimate.

Any liens filed by TPJ & TLG shall only be asserted, if necessary, against Third-Party Banks or Services or (without time limitation, but also without interest) in calculating the sale/purchase prices of the home at 122 Harbor Drive. TPJ & TLG agree and covenant that they will never foreclose nor initiate attempt to foreclose their liens against CEL III's right, title, and interest. TPJ & TLG further agree to defend and indemnify CEL III for any and all costs incurred in the defense of any third-person claiming a right to foreclose against CEL III by and through any lien to which CEL III has specifically agreed. These liens are intended as security against the Banks and their servicers.

DOCUMENTING REPAIR & RECONSTRUCTION (AND EXTRAORDINARY CLEANING) WORK: TPJ and TLG will provide written proof (formal and professional receipts, where available, supported by affidavits where necessary) to CEL III of all their expenditures, authenticating them under oath if necessary.

For his part, CEL III agrees in advance to TPJ and TLG, or T-sqared or any other entity actually performing valuable work at 122 Harbor Drive, to place up to 8 liens on the property at 122 Harbor Drive. These liens may reflect separate contractual claims (included in the $200.00 incidental



_____ TPJ          _____ TLG          ---3---

recordation and legal charges above) during the first four months of reconstruction and rental.   These liens shall (as required by law) be disclosed in all ongoing litigation against Wells Fargo Bank or any of its nominal successors or assigns.

TPJ and TLG agree and affirm that they will cooperate in verifying their work on the subject property at all stages of construction and for purposes of public recordation and litigation (including, if necessary, appearing in court).

TPJ & TLG acknowledge and understand that their cash rent payable to CEL III will increase periodically throughout the term of this lease, and that their down payment of $3100.00 covers (constitutes payment, immediately credited) of their first and last months only, regardless of how long TPJ & TLG actually stay.   Under no circumstances will CEL III refund the $3300.00 paid on Wednesday, August 21, 2019, for any reason.

PERIODIC (SEMESTERAL) ESCALATION.   The rent for 122 Harbor Drive due on February 5, 2020, will be $1750.00, and continue monthly at that rate through August 5, 2020.   On September 5, 2020, the rent will increase to $2000.00/month through December 2020.   On February 5, 2021, the rent will increase AT LEAST to $2,250.00/month absent a rescission or reformation of this original agreement by a document of equal formality, etc.   Every six months after that date, CEL III will have the right to state an increase in rental to comport with current market conditions in Palm Harbor, Florida.

RENT DUE, LATE PAYMENT FEES &
LEASE TERMINATION UPON 60 DAYS NON-PAYMENT

The rent will be due on the fifth day of every month (or the closest banking day thereto, starting on October 5, 2019).   Any rental payment received after the 15th day of the month will incur an additional $155.00 late fee.  Any rental payment received 30 days late will incur an additional $330.00 late fee.   Sixty days after a default in payment, the lease will automatically terminate and TPJ & TLG agree to vacate immediately.

Specifically: TPJ & TLG agree to move and vacate the property and to defend and indemnify CEL III for any delay or failure to vacate at the rate of $100/day plus attorney's fees and court costs for every day starting on the

_____TPS_____ TPJ          _____TLG_____ TLG          ---4---

60th day after default, for which TPJ & TLG waive all statutory and common law rights of and to demand, notice and presentment.

TPJ & TLG acknowledge, agree, affirm and understand that their deposit for rent is supplemented by their joint & several promises to CEL III, to repair, reconstruct, clean and maintain 122 Harbor Drive in excellent condition, and to cooperate against the Banks in litigation.

TPJ & TLG acknowledge that they will bear the complete cost for this cleaning and that they must take precautionary measures to protect their and their minor daughter's health.

Because the last two-months of rent have been paid in advance, TPJ & TLG may cancel their obligation on this lease, unilaterally, at any time on 60 days notice to CEL III, and will owe no further obligations upon notifying CEL III in writing.

## INSURANCE:

**CEL III does not and will not carry any insurance on 122 Harbor Drive and will not purchase any.**

**Prior to preparing this contract**, TPJ & TLG affirmed and acknowledged that on Monday, August 19, 2019, they provided CEL III with evidence of currently valid insurance which will cover all their residence and health (and that of their children, visitors, guests, licensees and invitees) at the house and real estate located at 122 Harbor Drive, Palm Harbor.

## OTHER EVENTS OF DEFAULT &
## TERMINATION: 60 DAYS NOTICE

IF at any time, TPJ & TLG allow their insurance to lapse, this will be considered an event of default equivalent to failure to pay cash rent, justifying termination of this lease with 60 days notice to quit automatic.

In the event of non-payment of cash rent, at any stage of period escalation, TPJ & TLG waive all notices regarding the termination of the lease within 60 days in that they have paid their last two months rental "up front".

_____TPJ        _____TLG        ---5---

Failing agreement for written renewal at the end of any six month period, or according to their own notice of termination, TPJ & TLG agree to move and vacate the property and to defend and indemnify CEL III for any delay or failure to vacate at the rate of $100/day for every day starting on the 60th day after default, for which TPJ & TLG waive all statutory and common law rights of and to demand, notice and presentment.

## MUTUAL OPTIONS TO SELL OR REFINANCE AT ANY TIME

One alternative purpose of this contract is to refinance the property, and TPJ & TLG agree to cooperate in this endeavor by affirming this contract, and their intentions to stay, at any time upon CEL III's request.

Another alternative purpose of this contract is to position TPJ & TLG to buy the property outright from CEL III and any and all claimants who either have or pretend to have lent money to Robert Stanley Tripka.

Regardless of the time limitations or any other provisions of law, CEL III will give credit for amounts documented as liens during the first four months (or subsequently, by separate agreement) to TPJ & TLG if these parties at any time in the future agree to a sale/purchase agreement regarding 122 Harbor Drive, Palm Harbor, Florida 34683.

TPJ & TLG have made substantial and material representations, necessary to this memorandum of understanding and agreement for rent and reconstruction, that they are both able and willing to perform all cleaning, maintenance, reconstruction, and repair work on the house, or to subcontract out certain specialized tasks, at their cost, such as the removal of bees from the outside stairwell (incorporating here the above-discussion of three essential mandatory elements of the contract and optional right to file, impose, and collect liens against bank or bank-servicer claimants only).

At no time nor for any reason whatsoever will TPJ & TLG bar, block or impede or limit Charles Edward Lincoln III's access to the property, but will assist and cooperate with him whenever necessary, including allowing CEL III's licensees, invitees, agents, appraisers, health officials, or insurance agents or adjusters to enter and inspect the property for any and all legal purposes.

_____TPJ_____ TPJ     _____ TLG    ---6---

Robert Stanley Tripka has agreed fully to cooperate by moving out on August 31, 2019, and so, the move-in date for TPJ & TLG will be September 1, 2019.

This agreement is NOT confidential, and may be filed with any U.S. Federal or Florida State Court and otherwise published and circulated to brokers and lenders.

TPJ & TLG must sign and acknowledge this final agreement must be affirmed, acknowledged and signed before a notary public in Pinellas County, Florida on Wednesday, August 21, 2019, in addition to either making a cash (or cashier's check) deposit of $3300.00 in CEL III's Iberiabank account prior to 4:00 p.m. Eastern Daylight Time.

We, the undersigned Troy P. Johnson & Tracey Lynn Gazarek, understand and agree that we are signing this unconventional memorandum of agreement and understanding with unusual benefits and provisions, and we acknowledge, affirm, and agree to our understanding of all provisions, and have reviewed signed each page by our initials, prior to signing before notary.

**Troy P. Johnson**
Florida Identification Card:
**J525-815-67-419-0**
Expires 01-19-2022
**Telephone: 813-506-9644**

**Tracey Lynn Gazarek**
Florida Driver License Class E
**G262-812-70-621-0**
Expires 04-01-2023
**Telephone: (727) 776-1392**

**E-mails: troy@i-assemble.com** & **service@t-sqaredassembly.com**

_____TPJ_____ TPJ          _____ TLG          ---7---

### Florida Notary's Jurat for Tracey Lynn Gazarek

    Tracey Lynn Gazarek appeared in person before me in the city of ____ St. Petersburg _____ in Pinellas County, Florida, on Tuesday the ~~Tuesday~~ *Wednesday* 21st day of August, 2019, to sign, execute, acknowledge, and affirm the above-and-foregoing Memorandum of Agreement & Understanding with Charles Edward Lincoln III.

    I am a notary in the state of Florida, authorized to administer oaths and take declarations and evidence.

    SIGNED AND ACKNOWLEDGED BEFORE ME, a Notary Public in *Pinellas County*, Florida, on this 21st day of August, 2019.



ANNA I SAVALLI
Notary Public – State of Florida
Commission # GG 167314
My Comm. Expires Dec 11, 2021
Bonded through National Notary Assn.

_____
Notary Public, Pinellas County
State of Florida

*NOTARY FOR RENTAL + RECONSTRUCTION agreement*

**Notary's Seal Above this Line**

Printed Name of Notary: _*Anna Savalli*_____

Business Address & Telephone of Notary: _*6201 Central Ave. St Petersburg, Fl. 33711*_

*FLDL G262-812-70-621-0 ISS 6-12-14 Ex 4-1-2023*

My Commission Expires: _*December 11, 2021.*_

_____ TPJ    _____ TLG    ---**8**---

**Florida Notary's Jurat for Troy P. Johnson**

Troy P. Johnson appeared in person before me in the city of
_St. Petersburg_ in Pinellas County, Florida, on Wednesday
the 21st day of August, 2019, to sign, execute, acknowledge, and affirm the
above-and-foregoing Memorandum of Agreement & Understanding with
Charles Edward Lincoln III.

I am a notary in the state of Florida, authorized to administer oaths
and take declarations and evidence.

SIGNED AND ACKNOWLEDGED BEFORE ME, a Notary Public
in _PINELLAS COUNTY_, Florida, on this 21st day of August, 2019.

> ANNA I SAVALLI
> Notary Public – State of Florida
> Commission # GG 167314
> My Comm. Expires Dec 11, 2021
> Bonded through National Notary Assn.

_____
Notary Public, Pinellas County
State of Florida

_NOTARY FOR Rental + Reconstruction agreement._

_____
Notary's Seal above this line

Printed Name of Notary: _Anna Savalli_

Business Address & Telephone of Notary: _6201. Centra Ave. St Petersburg, Fl 33710._
_FL ID. J525-815-67-419-0  IS 3-10-14  Ex 11-19-2022._

My Commission Expires: _December 11, 2021._

_____ TPJ          _____ TLG          ---9---